**Joyce BECKLEY et al.**

v.

**TOWN OF WINDHAM et al.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1996.

Decided Sept. 30, 1996.

Robert Alan Wake (orally), Windham, for Plaintiffs.

James N. Katsiaficas (orally), Jensen, Baird, Gardner & Henry, Portland, and Brian R. Olson, Windham, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Joyce Beckley and seven other residents of Windham ("the Neighbors")[1] appeal from the judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) affirming the decision of the Windham Planning Board

---

1. The seven additional plaintiffs are: Jeffrey Chubb, Linda Chubb, Anne Garland, Ivy Jordan, Richard Jordan, Marcia Wake, and Robert Wake.

("the Board") granting a permit to Roger Maynard and Laura Maynard to construct and operate a boat rental business on their property. On appeal, the Neighbors contend, *inter alia*, that the Board erred as a matter of law because the project as proposed is prohibited by the Windham Shoreland Zoning Ordinance. We agree with the Neighbors and vacate the judgment.

Roger and Laura Maynard own land adjacent to the Pleasant River in Windham. In 1992 the Maynards applied to the Windham Planning Board for a permit to construct a boat rental facility on their property which is located in a Resource Protection District ("RPD") as designated by the Windham Shoreland Zoning Ordinance. The proposed facility was to include a gravel parking lot, a twenty-four by twenty-eight foot building, a walkway from the building and parking lot to the water, a privy and holding tank, a wood-frame storage rack, and a temporary dock. The Maynards proposed to rent fifteen twelve-foot aluminum boats with two horse-power engines and five canoes from the facility.

Section 199-8(A) of the Windham Shore-land Zoning Ordinance lists, *inter alia*, uses permitted in a Resource Protection District. Pursuant to the Ordinance, a "commercial structure" is not a permitted use within a RPD. Uses that are permitted with planning board approval in a RPD include: (1) public and private parks and recreation areas involving minimal structural development, (2) piers, docks, wharves, breakwaters, causeways, marinas, bridges over 20 feet in length and uses projecting into water bodies, and (3) uses similar to those uses requiring a planning board permit. Structures accessory to permitted uses are allowed in a RPD, but require a permit from the Windham Code Enforcement Officer.

The Board approved the Maynards' proposal and granted them a permit to build the boat rental facility in the RPD. The Board found that the use proposed by the Maynards fell within three permitted uses under section 199-8(A): "marinas," "public and private parks and recreation areas involving minimal structural development" and "uses similar to uses requiring a PB [Planning Board] permit." The Board also found the proposed office/maintenance building to be an "accessory structure" to the principal marina use. The Board reasoned that because "accessory structures" are permitted in a RPD with a Code Enforcement Officer Permit, the proposed office/maintenance building fell within the scope of permitted uses and was not prohibited by the ban on "commercial structures." Following the Board's decision, the Neighbors filed this appeal.

 When the Superior Court acts as an intermediate appellate court and reviews an administrative agency decision, we review the agency's decision directly for abuse of discretion, errors of law, or findings unsupported by substantial evidence in the record. *H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 923 (Me.1996). "The interpretation of an ordinance is a question of law that is guided by the language, objectives, and general structure of the ordinance." *Dyer v. Town of Cumberland*, 632 A.2d 145, 148 (Me. 1993).

 The determinative question in the instant case is whether the ban on "commercial structures" within a Resource Protection District, as set forth in section 199-8(A) of the Ordinance, prohibits the construction and operation of the proposed boat rental facility by the Maynards. The Maynards and the Town assert that the office/maintenance building is not prohibited in the RPD because it is not a "commercial structure." The Ordinance does not define "commercial structure," but defines "structure" as "[a]nything built for the support, shelter or enclosure of persons, animals, goods or property of any kind." Windham, Me., Windham Code § 199-12 (July 1, 1974), *as amended* October 13, 1987. Additionally, the Ordinance states that "[t]erms not defined herein shall have the customary dictionary meanings." *Id.* The dictionary defines "commercial" as "[h]aving profit as a chief aim." The American Heritage College Dictionary 280 (3rd ed. 1993). Furthermore, we have previously stated that "the word 'commercial' as used in the law of zoning denotes a use for profit." *Bushey v. Town of China*, 645 A.2d 615, 618 (Me.1994) (citing 82 Am.Jur.2d *Zon-*

*ing and Planning* § 287 (1992 & Supp. 1994)).

The office/maintenance building is intended to contain a public area for sales activities, an office space, a maintenance area for the boats and a gasoline storage area. There can be little argument that the office/maintenance building proposed by the Maynards is a "commercial structure." Although "marinas" and "public and private parks and recreation areas involving minimal structural development" are listed as permitted uses in a RPD, this particular proposal contemplates the inclusion of a "commercial structure." The plain language of the Ordinance prohibits "commercial structures" in a RPD. The Windham Planning Board erred as a matter of law in granting the permit.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to vacate the permit issued to Roger and Laura Maynard.

All concurring.